UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80647-CIV-ZLOCH



LAURA VICK,

     Plaintiff,

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

   vs.

JOHN-SKIP OF BOYNTON, INC.,
d/b/a PLATINUM SHOWGIRLS, a
Florida Corporation,

     Defendant.

_____/

   THIS MATTER was tried before the Court, without a jury, on February 14, 2005.  The parties stipulated to a trial before the Court after Defendant John-Skip of Boynton, Inc. d/b/a Platinum Showgirls (hereinafter "Defendant") waived its demand for a trial by jury and the entering by the Court of specific findings of fact and conclusions of law.  However, pursuant to Federal Rule of Civil Procedure 52(a), which requires that in actions tried upon the facts without a jury the Court must "find the facts specially and state separately its conclusions of law," the Court makes the following Findings of Fact and Conclusions of Law irrespective of the aforementioned waiver.

     I.  <u>Procedural History</u>

   Plaintiff Laura Vick (hereinafter "Plaintiff") initiated the above-styled cause by filing a Complaint (DE 1) against Defendant

1



on July 16, 2003.  In Counts One and Two of said Complaint (DE 1), Plaintiff claims violations against herself and others similarly situated in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (hereinafter the "FLSA").  Additionally, in Count Three, Plaintiff alleged wage discrimination in violation of Florida Statutes Chapter 448.07.  Plaintiff sought to recover unpaid wages, liquidated damages and attorneys' fees and costs.

Based on Defendant's failure to participate in orderly discovery, the Court, at the December 3, 2004 Pre-Trial Conference, entered sanctions against Defendant.  The Court prohibited Defendant from entering into the record at trial of the above-styled cause any physical or documentary evidence.  See DE 49. Additionally, Defendant was limited to the introduction of only one witness at trial, namely, the corporate designee having the most knowledge of the issues involved.  Thereafter, the above-styled cause went to trial before this Court on December 8, 2004 on Count One[1] of the Complaint (DE 1) and ended in a mistrial.  See DE 48. Count One of the Complaint (DE 1) was again tried before the Court on February 14, 2005 and the aforementioned sanctions remained in effect.  Plaintiff's case-in-chief consisted solely of the testimony of Plaintiff Laura Vick and Defendant's case-in-chief consisted solely of the testimony of corporate designee and finance officer Marvin Zuckerberg.  No other witnesses were heard.

---

[1] Prior to trial, Plaintiff voluntarily waived Count Two of the Complaint and the Court declined to exercise supplemental jurisdiction over Count Three.

## II.  Jurisdiction

The Court has jurisdiction over the above-styled cause pursuant to 29 U.S.C. § 201 et seq. and 28 U.S.C. § 1331.

## III.  Findings of Fact

1.    Plaintiff is Laura Vick, an individual.

2.    Defendant is John-Skip of Boynton, Inc. d/b/a Platinum Showgirls, a Florida corporation engaged in the business of adult entertainment.

3.    Plaintiff was employed by Defendant for twenty-two weeks, three days a week, mainly as a bartender, but to a lesser degree as a waitress.  Plaintiff worked from December of 2002 until May of 2003 every Friday from 11:30 a.m until 7:00 p.m., Sunday from 1:00 p.m. until 7:00 p.m. and Monday from 11:30 a.m. until 7:00 p.m.

4.    Plaintiff testified she was required to conduct one hour of marketing for Defendant's business before each shift by passing out business cards and attempting to solicit patronage at Defendant's establishment.  Defendant conceded that Plaintiff engaged in said marketing though disagreed as to her estimation of the number of hours she spent so doing.  Given that Defendant's sole witness at trial, Marvin Zuckerberg (hereinafter "Mr. Zuckerburg"), testified that he was a part-time employee whose schedule did not always overlap with that of Plaintiff's schedule, the Court finds that Plaintiff's testimony is more likely to be accurate as to the number of hours she engaged in marketing.

3

Therefore, the Court finds that Plaintiff performed twenty-one hours of labor per week for Defendant as a bartender or waitress, plus three hours a week performing marketing on behalf of Defendant, amounting to twenty-four hours of labor per week.

5. Plaintiff testified that the issue of whether she was an independent contractor was never discussed and that she never signed an employment agreement designating her as such. In contrast, Defendant testified that everyone who worked for Defendant was classified as an independent contractor and filled out a form titled "Dancer/Independent Contractor." Defendant testified further that Plaintiff would have filled out such a form. Because Plaintiff's testimony is based on personal knowledge, and because Mr. Zuckerburg's is not, the Court adopts Plaintiff's aforementioned testimony as a factual finding.

6. At trial, Plaintiff testified that upon being hired, she was under the impression the work relationship was to last "a long time." Though Defendant noted at trial that it had the power to terminate the work relationship, it never testified that said relationship was for a term only. Based on the aforementioned testimony, the Court finds that Plaintiff was hired for an indefinite period, not a term.

7. Plaintiff only received tips for her labor; she received neither a check, cash, nor any other kind of compensation - such as food - from Defendant. Plaintiff testified that she typically

4

earned $100.00 to $125.00 in tips on Fridays, $25.00 to $50.00 in tips on Sundays and $100.00 in tips on Mondays.  These estimates include tips from patrons, "tip outs" from the exotic dancers to Plaintiff averaging $3.00 per dancer, as well as a deduction for Plaintiff's "tipping out" of the barback[2] at the end of each shift as per the industry standard.  Defendant, through Mr. Zuckerburg, disputed these figures.  However, because Mr. Zuckerburg admitted that his estimates were not based on personal knowledge, but were based on what he assumed Plaintiff made given the volume of business the establishment generally did, the Court adopts as a factual finding Plaintiff's testimony regarding tips.

8.   Neither party offered testimony at trial that Plaintiff was ever notified, at her date of hire or at anytime thereafter, that a tip credit was being applied towards an hourly wage she was to earn.  The credible and unrefuted testimony offered by Plaintiff was that upon asking when she received her paycheck, she was told that bartenders did not receive paychecks.

9.   Plaintiff sold beer, wine and spirits imported from countries and states other than from the United States and the state of Florida to customers who would pay with cash or via credit card.  Some of these credit cards used by the customers in Defendant's establishment and handled by Plaintiff were issued by

---

[2] According to Plaintiff's testimony at trial, a "barback" stocks the bar for the bartender and performs other perfunctory tasks.

banks other than banks operating in the state of Florida.
Plaintiff provided neither the alcohol she sold as a bartender, nor
did she provide any of the equipment or supplies needed to operate
a bar.

10.  Defendant determined the types, and prices, of the
beverages Plaintiff sold and required her to work in tandem with a
"barback" whom the Defendant hired.

11.  At trial, Plaintiff testified that she had no say in her
schedule or over the operation of the bar.  In response, Defendant
argued that Plaintiff did not have to work said hours and that she
could tend bar in any manner she saw fit, but had she chosen not to
work her schedule or had she, for example, changed the beverage
prices or opened the bar at hours of her choosing, she would have
been terminated.  Defendant also provided Plaintiff with a $300.00
"draw" at the beginning of her shift from which she was to make
change.  Also, if Plaintiff later came up "short" during an audit
that took place at the end of her shift, she was required to cover
the discrepancy from her own funds.  Thus, the Court finds that
Defendant also managed the finances surrounding alcohol sales.

12.  At no time did Plaintiff hold a license to serve alcohol;
however, Defendant did hold such licenses.  The Court also finds
that Plaintiff worked as an individual and not under a business
name, had no public listing as a bartender and that she did not
simultaneously tend bar for any other employer during the period

6

she was employed by Defendant.

13. Plaintiff had no ownership interest in Defendant's establishment.

14. Plaintiff was sometimes required to work as a waitress - a position which would incur fewer tips - rather than a bartender - where the tips were more substantial. Plaintiff left her position with Defendant because Defendant intended that she no longer serve as a bartender but instead switch to a less lucrative waitressing position.

15. While working for Defendant, Plaintiff received no benefits and no paperwork regarding taxes. Defendant paid no social security tax related to Plaintiff's employment. Plaintiff was not required to wear a uniform.

16. At trial, Plaintiff characterized her work as a bartender as critical to the success of the establishment and asserted that her services as a bartender were an incentive for customers to frequent the business. Defendant testified that a large majority of the revenue generated for Defendant comes from the sale of alcohol and conceded that the bar was essential to the operation of the business. The Court adopts both statements as factual findings.

## IV. Conclusions of Law

The Court notes that 29 U.S.C. § 206 of the FLSA provides that "[e]very employer shall pay to each of his employees who in any

7

workweek is engaged in commerce [a minimum wage]." Therefore, in order to find a party liable for failure to comply with the FLSA, it is necessary to find (a) an employment relationship, see Usery v. Pilgrim Equipment, Co., 527 F.2d 1308, 1311 (5th Cir. 1976),[3] (b) that the plaintiff was engaged in commerce, see Marshall v. Victoria Transp. Col, Inc., 603 F.2d 1122, 1123 (5th Cir. 1979), and (c) that the defendant failed to pay the plaintiff the minimum wage required by law, see Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 471 (11th Cir. 1982).

## A.  Employment Relationship

As a threshold matter, to bring a claim under the FLSA, Plaintiff must have been "employed" by Defendant within the meaning of the FLSA.   See Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996); see also Santelices v. Cable Wiring, Inc., 147 F. Supp. 2d 1313, 1318 (S.D. Fla. 2001).  The FLSA defines the terms relevant to such an inquiry rather curtly.  See Rutherford Food Corp v. McComb, 331 U.S. 722, 728-29 (1947)(noting that "there is in the [FLSA] no definition that solves problems as to the limits of the employer-employee relationship under the Act").  29 U.S.C. § 203(e) defines an "employee" as "any individual employed by an employer."  An "employer," in turn, is "any person acting directly

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

or indirectly in the interest of an employer in relation to an employee." See 29 U.S.C. § 203(d). To "employ" an individual is to "suffer or permit" the individual to work. See id. at § 203(g). Additionally, federal case law develops these concepts further. Therefore, a business "suffers or permits" one to work when "as a matter of economic reality, the individual is dependent on the entity." Antenor, 88 F.3d at 929. Whether an employment relationship exists under the FLSA turns on the "economic realities" of that relationship. Donovan, 676 F.2d at 470.

There is no formalistic or perfunctory approach to an economic realities inquiry. See Usery v. Pilgrim Equipment, Co., 527 F.2d 1308, 1311 (5th Cir. 1976). The touchstone, however, of an economic reality analysis, for the purposes of finding an employer-employee relationship, is that of dependency. Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1189 (5th Cir. 1979). In other words, the final and determinative question is whether the worker is so dependent upon the business with which she is connected as to come within the protection of the FLSA or whether she is sufficiently independent to lie outside its ambit. Usery, 527 F.2d at 1311. To assist in such an inquiry, certain aids exist to help a court determine whether an employee is sufficiently dependent on an employer to fall within the protective ambit of the FLSA, with no single criteria being dispositive. Id. at 1311-12. These factors include, but are not limited to: degree of control,

9

opportunities for profit or loss, investment in facilities, permanency of relation, skill required and whether the service rendered was integral to the alleged employer's business.  Id.

1.  Degree of Control

For purposes of determining economic dependency, the issue of control is only significant insofar as it shows that an individual exerts such control over a "meaningful part" of the business in question that they stand as "a separate economic entity."  See Usery, 527 F.2d at 1312-13.  Here, Plaintiff was clearly dependent upon Defendant and cannot be considered a separate economic entity.

First, Defendant controlled Plaintiff's work schedule as well as the labor she performed during her work hours.  See Doty v. Elias, 733 F.2d 720, 723 (10th Cir. 1984)(noting that even a relatively flexible work schedule does not necessarily make an individual an independent contractor rather than an employee within the meaning of the FLSA).  Additionally, deviation from the standards set by Defendant were grounds for termination and, thus, illustrative of Defendant's control over Plaintiff's employment. See Harrell v. Diamond A Entertainment, Inc., 992 F. Supp. 1343, 1349 (M.D. Fla. 1997)(noting that even the delegation of "a measure of discretion to [one's employees] does not necessarily mean that [said employees] are . . . independent contractors").

Second, Defendant set the procedures by which Plaintiff did her job.  See Usery, 527 F.2d at 1311 (finding employee covered by

10

the FLSA where employer controlled all meaningful aspects of laundry pickup business; such as, hiring all employees, fixing prices and controlling advertising). Defendant fixed the prices, and types, of alcohol sold by Plaintiff and she was required to work with employees of Defendant's choosing.

Finally, regarding the Court's findings that Plaintiff was not required to wear a uniform, that Plaintiff received no benefits and that Defendant paid no social security taxes on behalf of Plaintiff, the Court finds that to the extent these factors are even relevant to the instant inquiry, they are outweighed by the aforementioned illustrations of control. Thus, the Court concludes that, on par, Defendant exerted substantial control over Plaintiff's employment such that Plaintiff did not stand as a separate economic entity. This factor, therefore, weighs in favor of economic dependence.

## 2. Opportunities for Profit or Loss

Because Plaintiff was dependent upon tips for her profit, her actions had a significant impact on her profit or loss. Defendant argues that insofar as Plaintiff solicited patrons to frequent the business as part of her marketing requirements, she profited and to the extent she failed to do so, she suffered a loss. The Court finds this argument unconvincing. See Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1050 (5th Cir. 1987) (noting that "although experience and courtesy to customers may to some degree enhance [a

worker's profit], this is equally true of all commissioned employees and of employees earning gratuities"). Moreover, the opportunity for profit and loss has more to do with relative investments, with control over more significant aspects of the business and with other forms of initiative than with establishing customer goodwill in order to garner tips. See Harrell, 992 F. Supp. at 1351-52; see also Reich v. Circle C Investments, Inc., 998 F.2d 324, 328 (5th Cir. 1993)(noting that the "ability [of exotic dancers] to develop and maintain rapport with customers is not the type of 'initiative' contemplated by this factor"). Thus, the Court concludes Plaintiff was more like a typical wage earning employee toiling for a living, rather than an independent contractor seeking a return on a capital investment. See Brock, 814 F.2d at 1051. This factor, then, favors economic dependence.

3.   Investment in Facilities

The Court concludes that Plaintiff made no noteworthy investment in Defendant's facilities and that Plaintiff was dependent upon these facilities to work as a bartender. See Usery, 527 F.2d at 1313 (finding total dependency on employer confirmed where employer furnished the "station, cash register, fixtures, security devices, counters, racks, hangers, bags, tags, receipts, utilities, telephone, and liability insurance"). This factor weighs in favor of economic dependence.

12

4.   Permanency of Relationship

The Court concludes that Plaintiff was an at-will employee and was not hired to work a definite period.  Moreover, while either party could have terminated the work relationship at any time, Plaintiff had nothing to transfer but her labor.  See id. at 1314 (finding economic dependence as to permanency of the employer-employee relationship where "[employees had] nothing to transfer but their own labor").   This factor, therefore, suggests Plaintiff's economic dependence upon Defendant.

5.   Skill Required

From the aforementioned findings of fact regarding Plaintiff's labor as a bartender, waitress and advertiser on behalf of Defendant's establishment, the Court concludes that Plaintiff was not "a specialist[] called in to solve a special problem, but [an] unskilled laborer[] who performed the essential everyday chores of [defendant's] operation."   McLaughlin v. Seafood, Inc., 861 F.2d 450, 452 (5th Cir. 1988).  Based on the forgoing, the Court is not persuaded that Plaintiff's work involved the kind of initiative and skill that set her apart as an independent contractor.  See Usery, 527 F.2d at 1314 (noting that "[r]outine work which requires industry and efficiency is not indicative of independence").  This factor also evinces Plaintiff's economic dependence upon Defendant.

6.   Integral Nature of the Service Rendered

The extent to which the task performed by the alleged employee

13

was integral to the business of the employer is a factor indicating dependence.  Santelices, 147 F. Supp. 2d at 1319.   The Court concludes that the serving of alcohol in an adult entertainment establishment is critical to the economic success of the establishment.   This factor, therefore, is in favor of economic dependence.

7.  Additional Indicia

The Court notes that in determining whether an individual is an "employee" within the meaning of the FLSA, the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship.  See Harrell, 992 F. Supp. at 1353 (noting that an employment contract "created by [the employer] does little to evidence [a worker's] intent to be treated as an independent contractor").  Therefore, even if the Court were to adopt the position of Defendant that Plaintiff filled out an application for employment designating her as an independent contractor, a position which the Court does not accept, this factor would be of little import.   Finally, the Court notes that an "employer cannot saddle a worker with the status of an independent contractor, thereby relieving itself of its duties under the FLSA . . . where the economic reality is that the worker is not and never has been independently in the business which the employer would have [her] operate." See Mednick v. Albert Enterprises, Inc., 508 F.2d 297, 301-02 (5th Cir. 1975).   Based on the Court's

14

findings that Plaintiff worked as an individual and not under a business name, had no public listing as a bartender and that she did not simultaneously tend bar elsewhere, the Court concludes that these additional facts suggest economic dependence.

In sum, the Court concludes that the aforementioned findings of fact illustrate that, as a matter of economic reality, Plaintiff was dependent upon Defendant as an employee. Defendant was in almost complete control of Plaintiff, an unskilled laborer who nonetheless performed an integral part of Defendant's routine business serving drinks, waiting tables and engaging in marketing. Defendant shouldered most of the opportunity for profit and loss and invested all of the overhead in the facilities. Plaintiff, on the other hand, had only her labor to offer and believed she was in an indefinite employment relationship with Defendant. In sum, it is clear that based on the totality of the relationship between the parties, Plaintiff was economically dependent on Defendant and, thus, not an independent contractor. See, e.g., Doty, 733 F.2d at 723 (finding an employment relationship where waitress neither invested in an enterprise, nor shared in its profits or losses, the employer retained the power to fire plaintiffs at will and where the job in question was unspecialized).

## B. Engagment in Commerce

Next, the coverage of the FLSA extends to any employee "engaged in commerce." See 29 U.S.C. § 206(a). In determining

whether an employee is engaged in commerce, courts examine the extent to which an employee's work is so closely related to the movement of commerce that it may be practically considered part of the stream of commerce and not merely a local isolated activity. See Marshall v. Victoria Transp. Co., 603 F.2d 1122, 1123 (5th Cir. 1979); see also Figueroa v. America's Custom Brokers, Inc., 48 F. Supp. 2d 1372, 1375 (S.D. Fla. 1999)(noting that "[g]enerally speaking, any regular contact with commerce, even if it is small, will result in an employee being covered by the FLSA"). By way of example, employees involved in the handling or selling of alcoholic beverages produced outside the state where a business is located have been found to meet this standard and are, therefore, covered by the FLSA. See, e.g., Reich v. Priba Corporation, 890 F.Supp. 586, 590 (N.D. Tex. 1995)(finding that employees who sold or handled alcoholic beverages that moved in interstate commerce were covered by the FLSA).

Here, the Court concludes that Plaintiff was engaged in interstate and foreign commerce. In her capacity as a bartender, Plaintiff sold beer, wine and spirits imported from countries and states other than from the United States and the state of Florida. Also, Plaintiff processed credit card purchases, many of which were on behalf of out-of-state patrons with credit cards from out-of-state banks. It is clear, therefore, that Plaintiff was engaged in foreign or interstate commerce and that this element of an FLSA

16

claim is satisfied.

### C.   Failure to Pay Minimum Wage

As noted, the final element of a successful FLSA claim for unpaid wages requires a plaintiff to establish a failure on the part of the defendant to pay the appropriate wage.   The Court further notes that:

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946); see also Brock v. Norman's Country Market, Inc., 835 F.2d 823, 828 (11th Cir. 1988)("It is firmly established where an employer has not kept adequate records of their employees wages and hours as required by the FLSA, the employees will not be denied a recovery of back wages on the ground that their uncompensated work cannot be precisely determined").  Absent an exception, an employee covered by the Act during the time in question was entitled to a minimum wage of $5.15 per hour.  See 29 U.S.C. § 206(a)(1).

Here, Plaintiff was never paid a minimum wage by Defendant and only received tips as compensation for her labor.  Defendant, in turn, argues that Plaintiff was an independent contractor and,

17

thus, not entitled to minimum wage under the FLSA.  This argument fails, however, because, as noted above, the Court has found that Plaintiff is indeed covered by said Act.  Therefore, based on the Court's finding that Plaintiff received tips only and was never paid a wage by Defendant for her labor - neither in cash, by check or through other compensation - the Court concludes that Defendant failed to pay Plaintiff the appropriate minimum wage.

Defendant next argues that even if Plaintiff is considered an employee covered under the Act, and even if Defendant failed to pay Plaintiff the appropriate wage, Defendant is entitled to an offset based on the amount of tips Plaintiff earned.  Under 29 U.S.C. § 203(t), a "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  The Court notes that an employer is entitled to apply a "tip credit" towards the minimum wage of its employees only if it establishes that (1) the employee has been informed by the employer that a tip credit is being applied, and (2) all tips received by the employee have been retained by the employee, or are part of a valid tip pool.  See 29 U.S.C. § 203(m); Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 298 (6th Cir. 1998).  Moreover, where an employer pays no wages at all and the employee's compensation is based solely upon tips, courts have found that the employer may not apply a tip credit and said employee is liable for the full minimum wage for each hour worked.

18

See <u>Doty</u>, 733 F.2d at 723; <u>Harrell</u>, 992 F. Supp. at 1358; <u>Reich</u>, 890 F. Supp. at 596.

Here, Plaintiff was never notified, at her date of hire or at anytime thereafter, that a tip credit was being applied towards an hourly wage she was to earn.  As noted, upon asking when she received her paycheck, Plaintiff was told that she did not receive one.  The Court is unwilling to construe such a statement as notice that a tip credit was being applied against Plaintiff's overall wage – which was nonexistent – or as notification of the relevant provisions of the FLSA.  Moreover, the Court does not conclude that there was an agreement, either explicit or implicit, that Plaintiff was to be compensated solely on the basis of tips.  Plaintiff is entitled, therefore, to the full minimum wage of $5.15 per hour for each hour worked while employed by Defendant.

D.  <u>Damages</u>

1.  <u>Backpay</u>

Plaintiff performed twenty-one hours of labor per week for Defendant as a bartender or waitress, plus three hours a week performing marketing on behalf of Defendant, amounting to twenty-four hours of uncompensated labor per week.  Thus, Plaintiff is entitled $2,719.20, the value of twenty-four hours of labor per week for twenty-two weeks at an hourly wage of $5.15 per hour.

19

2.  <u>Liquidated Damages</u>

Under the FLSA, "[a]ny employer who violates the provisions of section 206 . . . shall be liable to the employee . . . in the amount of [her] unpaid minimum wages . . . and in an additional equal amount as liquidated damages." <u>See</u> 29 U.S.C. § 216(b).  The Court may, however, decline to award liquidated damages if the employer establishes (1) that such action was undertaken in "good faith" and (2) that the employer had "reasonable grounds" for believing that his act or omission was not a violation of the FLSA. <u>See</u> 29 U.S. C. § 260; <u>see also</u> <u>Spires v. Ben Hill County</u>, 980 F.2d 683, 689 (11th Cir. 1993).

Regarding the "good faith" standard, it is insufficient for the employer to merely assert that it subjectively believed that it was in compliance with the FLSA.  Rather, the employer possesses the burden of demonstrating that it acted "in reliance on an administrative regulation, order, ruling, approval or interpretation of an agency of the United States." <u>Sack v. Miami Helicopter Service, Inc.</u>, 986 F. Supp. 1456, 1472 (S.D. Fla. 1997). Furthermore, "good faith" requires "some duty to investigate potential liability under the FLSA." <u>Barcelona v. Tiffany English, Pub., Inc.</u>, 597 F.2d 464, 468-69 (5th Cir. 1979).  Regarding reasonableness, an employer may not rely on ignorance alone as reasonable grounds for believing its actions are not in violation of the FLSA.  <u>Id</u>.

In this case, Defendant put forward no direct testimony that it believed it had acted in compliance with the FLSA, or with any of the aforementioned authorities, in deciding to compensate Plaintiff solely on the basis of tips.  Defendant merely argued that Plaintiff, like all its employees, was an independent contractor.  Based on this testimony alone, the Court cannot find Defendant acted in good faith or reasonably in failing to adhere to the FLSA.  Plaintiff, therefore, is also entitled to an award of liquidated damages in the amount of $2,719.20.

3.  Attorneys' Fees and Costs

A prevailing party under the FLSA is entitled to recover "a reasonable attorney's fee" and "costs of the action."  See 29 U.S.C. § 216(b).  The Court notes that Plaintiff is a prevailing party and, therefore, entitled to the relief afforded by 29 U.S.C. § 216(b).

V.  Conclusion

Because there was an employment relationship between Plaintiff and Defendant, Plaintiff was engaged in commerce and Defendant failed to pay Plaintiff the minimum wage required by law, Defendant is liable to Plaintiff pursuant to the dictates of the FLSA. Because Defendant failed to establish that it acted in good faith and upon reasonable grounds in failing to pay Plaintiff minimum

21

wage for her labor, Plaintiff is entitled to liquidated damages. Finally, Plaintiff is entitled to reasonable attorneys' fees and costs.

The Court will enter final judgment by separate document.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this _____ day of May, 2005.

WILLIAM J. ZLOCH
Chief United States District Judge

Copies furnished:

Arthur Schofield, Esq.
For Plaintiff

Domenic Grosso, Esq.
For Defendant

22